James A. DENNIS and Jean D. Dennis, his wife, Appellants,

v.

GENERAL ELECTRIC CORPORATION, Appellee.

No. 84–1459.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1985.

Decided May 21, 1985.

John E. Sutter, Baltimore, Md. (Peter T. Nicholl; Ashcraft & Gerel, Baltimore, Md., on brief), for appellants.

Donald E. Jose, Asst. Director, Torts Branch Civil Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen.; Jeffrey Axelrad, Director, Torts Branch; Robin A. Henderson, Madelyn R. Creedon, Trial Attys., U.S. Dept. of Energy, Washington, D.C., on brief) for appellee.

Before WIDENER, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

The plaintiffs, James A. Dennis and his wife, Jean D. Dennis, brought this federal diversity action against the defendant, General Electric Company ("G.E."), based on their allegation that James Dennis was negligently exposed to radiation while he participated in the demolition of G.E.'s SL–1 Army Nuclear Reactor in 1962. Plaintiffs also allege that this unnecessary exposure to radiation ultimately caused James Dennis to contract a rare form of cancer known as Waldenstrom's Macroglobulinemia in 1977. However, after a lengthy trial, the jury determined that James Dennis' exposure to radiation did not cause him to contract Macroglobulinemia. The district court then denied plaintiffs' motion for a new trial.

On appeal, plaintiffs strenuously assert that the district court's denial of their motion for a new trial constitutes an abuse of discretion because they were substantially prejudiced by defense counsel's improper communication with the jury. We disagree.

## I.

### Factual Background

Early in the trial, the jury asked the courtroom clerk to deliver a Sunday morning comic strip cartoon successfully satirizing lawyers to defense counsel, Donald E. Jose. After enjoying the cartoon's well-intentioned humor, Jose showed it to plaintiffs' counsel, John E. Sutter, and informed him that the cartoon had come from the jury. During his closing argument, Jose told the jury that they had experienced many different events including good natured humor. He then remarked:

> I remember your giving me a cartoon, and I enjoyed that; and I really wish that I had more time in closing argument, because I have some good lawyer stories that I would like to tell you.

Plaintiffs did not object to Jose's reference here to the cartoon the jury gave him. After the jury returned an unfavorable verdict, however, plaintiffs moved for a new trial on the basis that the cartoon and Jose's subsequent reference to it constituted an impermissible jury communication. The district court denied the motion because (1) the objection to the cartoon was untimely, and (2) Jose's reference to the cartoon in his closing argument was harmless. We agree with the district court.

## II.

### Failure to Object at Trial

It is the universal rule that during closing argument counsel " 'cannot as a

rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial.'" *United States v. Elmore*, 423 F.2d 775, 781 (4th Cir.), *cert. denied*, 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940)). A motion for a new trial should not be granted, therefore, where the moving party has failed to timely object to the alleged impropriety giving rise to the motion. *Uhl v. Echols Transfer Co.*, 238 F.2d 760, 765 (5th Cir.1956). The failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired. *Socony-Vacuum Oil Co.*, 310 U.S. at 239, 60 S.Ct. at 851.

■ When Jose referred to the cartoon in his closing argument, plaintiffs were aware of all the necessary facts upon which they could base an objection to the cartoon reference. Nevertheless, they remained silent until after the jury returned its verdict. As a consequence, we agree with the district court that

> [t]hroughout closing argument and instructions, the plaintiffs had sufficient opportunity to raise their objection and request voir dire, a curative instruction, or a mistrial. By remaining silent, plaintiffs provided the court no opportunity to grant them the very relief they now request. Instead, gambling on a favorable verdict, the plaintiffs permitted the trial to proceed, and the jury to retire to reach a verdict. Only after an adverse verdict have the plaintiffs raised this point. In such a situation, they cannot claim harm from what they had opportunity to remedy, but did not.

(J.A. 107). Manifestly, the district court's alleged error in permitting Jose to refer to the cartoon in his closing argument without later giving what amounts to an unsolicited cautionary instruction was not sufficiently obvious or severe to render an objection by the plaintiffs unnecessary. Consequently, plaintiffs unexcused delay in asserting that the cartoon reference was an improper jury communication precludes our consideration of that asserted error on the merits.

III.

Harmless Error

After observing the entire trial and reviewing the cartoon, the district court concluded the cartoon did not cause plaintiffs to suffer even "the slightest bit of prejudice." Unlike our review on appeal, the district court had the unique opportunity to observe every facet of the trial and the jury's actions throughout it. Therefore, we do not hesitate to give the district court's finding of no prejudice substantial weight.

■ Because the other grounds for granting a new trial are inapplicable, plaintiffs argue that a new trial is necessary here to avoid a miscarriage of justice. *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 298 (4th Cir.1984). However, no miscarriage of justice occurred here. The cartoon depicted lawyers in a humorous light. It revealed no favoritism by the jury for either side. Jose's reference to the cartoon was no more than a polite acknowledgment to the jury that he had received it. There was no clandestine communication by Jose with the jury. The evidence reveals no calculated attempt by Jose to prejudice plaintiffs through his benign reference to the humorous cartoon. Where, as here, the "contact" with the jury was indirect and inadvertent, the verdict should not be disturbed unless the contact appeared to improperly influence the jury. *Budoff v. Holiday Inns, Inc.*, 732 F.2d 1523, 1525 (6th Cir.1984).

■ Unless the jury's impartiality is sacrificed, mere technical and unintentional contacts between counsel and the jury should be deemed harmless. *Cf. McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). There is no discernible reason why Jose's reference to the cartoon

would affect the impartiality of the jury in this case. Jose's self-effacing reference to the cartoon simply revealed that he has a sense of humor and that he is capable of chuckling at his own profession. It would require speculation upon the improbable to presume that Jose's apparently innocuous reference to the cartoon prejudiced plaintiffs in any way. Finally, the district court cautioned the jury that "statements, arguments, and questions by lawyers are not evidence." This ameliorating instruction substantially removed any possibility of prejudice from Jose's reference to the cartoon. We are persuaded, therefore, that the jury's well-intentioned attempt at humor was harmless and in no way deserving of our condemnation by reversal of their verdict.[1]

For the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.

---

1. The cartoon was not the jury's first successful attempt at humor. In response to the district court's admonition to the jury that they should not view the movie *Silkwood* because it might prejudice them against nuclear power (the cause of alleged radiation exposure here), one juror asked whether they were prohibited from watching the television show *Frosty The Snowman* since it too concerned a possible meltdown.