**Mark R. HAFNER, Plaintiff-Appellee,**

v.

**David BROWN; Gary Reininger; Jonathan Pease; Terry Ressin, Defendants–Appellants,**

**and**

**David Hahn, Defendant.**

No. 92–1155.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 27, 1992.

Decided Dec. 22, 1992.

Woong (Thomas) Yi, Gartrell, Alexander & Gebhardt, Silver Spring, MD, argued (Bernadette Gartrell, on brief), for defendants-appellants.

Allan Heneson, Gordon & Heneson, P.A., Baltimore, MD, argued, for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

Mark Hafner, the appellee, filed a civil suit seeking compensatory and punitive damages against five Baltimore City Police Officers—David Hahn, David Brown, Jonathan Pease, Gary Reininger, and Terry Ressin—in the United States District Court for the District of Maryland. Hafner claimed that the officers deprived him of his constitutional rights in violation of 42 U.S.C. § 1983 through the use of excessive force during arrest and that they acted in conspiracy to violate his rights. After initial jury deliberations and supplementary jury instructions requiring additional deliberation, the jury returned a verdict for Hahn [1] but against Brown, Pease, Reininger, and Ressin. Those four officers have brought the present appeal.

---

1. The jury found in favor of Hahn and therefore he is not part of the present appeal.

In the early morning hours of November 4, 1989, Hafner was seen toting a shotgun as he walked the streets of Baltimore. Matt Carter, a trial witness for Hafner, testified that he saw Hafner on Holabird Avenue at 1 a.m. and witnessed him fire once in the direction of an industrial park, once down Holabird Avenue toward Dundalk Avenue, and twice or thrice through the windshield of his own car. Carter then saw Hafner walk down Holabird Avenue toward Dundalk.

Appellant Officer Brown testified that at approximately 1:10 a.m. that same morning, while working in a marked one-person police unit, he entered a 7–Eleven convenience store on Holabird Avenue. Shortly thereafter, a woman (Hafner's witness Linda Manley) rushed in shouting that a man with a gun was outside. When Brown exited the store into the parking lot, he heard a shotgun blast and observed Hafner approximately thirty feet away with a shotgun. He took cover, drew his gun, and called for assistance on his police radio.

In response to the call for assistance, first Officer Hahn and then Officers Reininger, Pease, and Ressin arrived at the scene. According to Hahn's testimony, as Hahn exited his car, Hafner fired in his direction and then continued walking down the sidewalk. Reininger and Pease confronted Hafner and demanded that he drop his shotgun. After a very brief hesitation, he followed the police instruction.

What exactly followed was the key factual determination in the trial below. The police officers contended that Hafner was "combative and resisted being handcuffed by kicking and flailing his arms around" and perhaps was high on drugs. They argued that they reacted appropriately to Hafner's high level of resistance and his frenzied behavior.

Hafner's witnesses, Carter and Manley, painted a different picture. Carter testified that some time after he saw Hafner shooting the shotgun, he noticed in the distance (approximately 100 yards) what looked like an arrest and in particular a blond-haired officer (Pease) kicking someone in an extremely vicious manner, likening it to a football player "kicking field goals." As he advanced, he saw Hafner handcuffed and lying face down on the ground. As Hafner was lifted into the paddy wagon, the blond-haired officer pushed him into the wagon.

Manley testified that at about 1 o'clock of the morning in question she was talking with Officer Brown in the 7–Eleven. She alerted Brown that the shotgun-toting person was outside and remained in the 7–Eleven parking lot during the entire episode. At the trial, she claimed to have witnessed Officer Brown and especially Officers Pease, Reininger, and Ressin "beat[ing] [Hafner] up really bad;" in particular, she described a ruthless repetition of kicking, punching, and tripping of Hafner *after* he was handcuffed (what she referred to as a "beating frenzy"). Counter to the officers' claims, she stated that Hafner did not resist arrest but simply lay there and only began moving in response to the officers' kicks.

After Hafner's arrest on November 4, 1989, he was taken to the police station and charged with assault with intent to murder, battery, resisting arrest, possession of a deadly weapon with intent to injure, and discharging a firearm within the Baltimore City limits. On October 24, 1990, Hafner filed the present complaint against Officers Brown, Pease, Reininger, and Hahn. The complaint alleged excessive use of force by the officers against Hafner during his arrest. He later amended his complaint to include (1) as a defendant Officer Ressin and (2) as a claim conspiracy to deprive him of his constitutional rights.

A jury trial began on September 23, 1991. Two eyewitnesses, Carter and Manley, testified on behalf of Hafner. During cross examination of Manley, the appellants' counsel attempted to ask whether she had ever been arrested before and the nature of those arrests in order to show a likely bias against the police. Hafner's counsel objected on the grounds that only convictions should be used to attack credibility and the district court sustained the objection.

After both sides had closed their cases, the district court gave instructions to the jury. In particular, he gave Hafner's instruction # 15 concerning civil conspiracy and refused to give the officers' instructions on conspiracy (# 10 and # 11). The officers' counsel took exception to Hafner's instruction on the ground that it was "an overstatement of the law in conspiracy."

The district judge also delivered Hafner's instruction # 7 discussing the rights provided by Title 42, Section 1983 as arising from the Fourteenth Amendment. Two other Hafner instructions (# 8 and # 9) given to the jury also contained references to the due process clause of the Fourteenth Amendment.

During its deliberations, the jury asked for clarification about the duty of the jurors to award damages and in what fashion, individual or lump sum, that award should be assessed. The district judge responded that:

> Compensatory damages are assessed against all defendants whom you find liable for excessive force. You should determine whether any defendants are liable under this claim. To the extent any defendant is liable, you should determine the monetary value of the plaintiff's injury. This amount will be borne by each of the defendants you find guilty equally. The same procedure should be used regarding the claim of conspiracy ... You may assess punitive damages against any defendant guilty of either charge. However, the punitive damages awarded to each individual will be borne by that defendant individually.

After deliberating in light of the instruction, the jury returned the following verdict on Counts I (excessive use of force) and II (conspiracy):

|  | Count I | Count II | Compensatory | Punitive |
|---|---|---|---|---|
| *Hahn* | not liable | not liable | | |
| *Brown* | not liable | liable | $ 0 | $ 1,000 |
| *Reininger* | liable | liable | $ 8,000 | $ 3,000 |
| *Pease* | liable | liable | $12,000 | $ 5,000 |
| *Ressin* | not liable | liable | $ 0 | $ 1,000 |
| | | TOTAL | $20,000 | $10,000 |

Additionally, the forewoman stated that the jury had added conspiracy damages "because we were told there were three awards."

The district judge immediately concluded that the jury had committed two errors in the verdict: (1) mistakenly assessing different amounts for compensatory damages and (2) incorrectly assessing punitive damages without a finding of compensatory damages (though the finding of liability including damages for conspiracy would supply such a finding). The district judge temporarily had the jury retire in order to permit discussion by him of the verdict with counsel. Extensive debate ensued. Hafner contended that the jury had not announced its entire verdict claiming that the verdict was not fixed and final. The officers countered that the verdict was complete and that those portions which were in error should be struck, resulting in no damages against Brown or Ressin. The officers also asserted that the jury should only be allowed to readjourn to determine a single compensatory damage level for Pease and Reininger.

The district judge recalled the jury and asked the forewoman whether any part of the verdict remained unannounced. The forewoman responded that she still needed to read conspiracy charges for damages. On further questioning by the district judge, the forewoman explained that some confusion existed about possible awards, with the jury's understanding being that three awards were to be determined: compensatory, punitive, and conspiracy. The district judge further examined the forewoman to determine what the jury had decided with respect to the guilt of the

different officers. After considering her responses and the entreaties of counsel, the district judge offered a supplemental instruction to the jury and allowed the jurors to deliberate a second time. The new instruction was more explicit:

> ... before you can award punitive damages, you have to find some compensatory damages. With regard to compensatory damages, it should be only one amount determined. The defendants who you find liable are liable jointly and severally for any compensatory damages. Now, contrary, with regard to punitive damages, the figure can be different as to each defendant against whom it is assessed, like you said. They may vary depending upon the circumstances involved as to that defendant.

After deliberating in light of the new instruction, the jury returned the following verdict on Counts I (excessive use of force) and II (conspiracy):

| | Count I | Count II | Compensatory | Punitive |
|---|---|---|---|---|
| Hahn | not liable | not liable | | |
| Brown | not liable | liable | $20,000 | $ 2,000 |
| Reininger | liable | liable | $20,000 | $11,000 |
| Pease | liable | liable | $20,000 | $15,000 |
| Ressin | not liable | liable | $20,000 | $ 2,000 |
| | | TOTAL | $20,000 | $30,000 |

Judgment was entered thereon.

Officers Brown, Reininger, Pease, and Ressin each filed an appeal on January 21, 1992.

I. *The district court did not err in giving the jurors supplemental instructions and allowing them to redeliberate.*

■ After the jury announced its initial verdict and damage awards, the district judge concluded that the jury had erred in awarding punitive damages without compensatory and in assigning different levels of compensatory damages where liability was joint and several. He ascertained, through inquiry of the forewoman, that the verdict was not complete or final. Accordingly, he gave the jury additional, more explicit directions and allowed them to redeliberate in light of the new instructions.

The officers challenge the supplemental instructions and second deliberation as resulting in substantial prejudice against them.[2] But, the circumstances surrounding the incompleteness of the jury's first verdict justify the district judge's resubmission and fail to support the officers' contention that the jurors were unfairly prejudiced.

The jurors clearly were confused about the awards of damages as evidenced by the questioning of the forewoman by the district judge:

> THE COURT: I would ask if you have any additional part of your verdict that you haven't yet announced.
> FOREWOMAN: Conspiracy charges for damages.
> THE COURT: [T]he verdict sheet that you followed asked about conspiracy. As to each of the defendants, it asked ... do you find a particular defendant liable for conspiracy to deprive the plaintiff of his constitutional rights?
> FOREWOMAN: And we answered yes.
> THE COURT: But if you answered yes to something else—
> FOREWOMAN: Because we felt there were three awards to be made, compensatory, punitive and conspiracy. Conspiracy was not listed. We added that and awarded damages for conspiracy. I don't know whether we are correct or not because it is not on the sheet. We felt there were three awards from your definition of dealing with this particular area. We may have overstepped our bounds.
> 　　*　　*　　*　　*　　*　　*

---

**2.** In their brief, the appellees do not challenge redirection on the issue of joint and several liability. Instead, they only challenge supplemental instructions clarifying the contingency of punitive damages upon the existence of compensatory damages.

THE COURT: I would ask you [to] advise the Court and the parties of what further verdicts you have.

FOREWOMAN: ... We answered yes [to the question of conspiracy]. Then in going to ... David Brown, we did assess conspiracy damages ... [i]n the amount of $1,000. Gary Reininger ... $8,000. Jonathan Pease ... $10,000. And Terry Ressin ... $1,000.

In the district court judge's original explanation of damages, in answer to a jury query, he had stated that:

[c]ompensatory damages are assessed against all defendants whom you find liable for excessive force ... The same procedure should be used regarding the claim of conspiracy ... You may assess punitive damages against any defendant guilty of either charge.

The jury could have read such a direction to imply that three distinct awards could be granted. Not surprisingly, then, the jury's original verdict did not award compensatory damages against officers Brown and Ressin because they were not found liable for excessive force. Instead, the jury assessed both punitive damages and conspiracy damages against Brown and Ressin because both were found liable for conspiracy.

After listening to the forewoman's explanation and the attorneys' arguments, the district judge concluded that the original instruction led to unnecessary confusion and proceeded to clarify the award guidelines. By resubmitting the verdict, the judge did not coerce the jurors but rather aided them, describing the means of properly translating their previous findings of fact into a legal outcome.

In fact, the two jury verdicts are very similar. The punitive damages awarded in the second verdict against Officers Brown, Reininger, and Ressin are simply an aggregate of the punitive and conspiracy damages assessed against each officer in the first verdict. The punitive damages assessed against Officer Pease ($15,000) were $2,000 lower than the total of punitive and

conspiracy damages assessed against him in the first verdict. The only dramatic shift was in the award of compensatory damages. Taking into account the intended conspiracy awards, all appellants now were assessed compensatory damages; however, the total compensatory award remained the same.

The appellants attempted to read the shift in the award of compensatory damages as a change in the determination of guilt. Yet, the jury did *not* alter its findings of liability. The only change was that the jury now understood that two bases for liability existed (excessive use of force and conspiracy) and two damage awards were available (compensatory and punitive), but that one award (punitive) was dependent upon the existence of the other (compensatory).

The case law cited by the police officer is not dispositive of the case at hand. In *McCollum v. Stahl*, 579 F.2d 869 (4th Cir. 1978), the Fourth Circuit panel did conclude that a jury verdict assessing punitive damages without compensatory damages should not have been resubmitted, but it reached that conclusion on the grounds that (1) the jurors had found *no* wrongful conduct[3] and (2) they clearly understood the proper procedures for granting damages. 579 F.2d at 871. In the present case, the jurors had concluded that all appellants were liable for conspiracy to commit or permit wrongdoing under 42 U.S.C. § 1983 and awarded compensatory damages against each.

■ Precedent actually favors resubmission of a contradictory verdict. *Los Angeles v. Heller*, 475 U.S. 796, 804, 106 S.Ct. 1571, 1576, 89 L.Ed.2d 806 (1986) ("[U]pon receiving an apparently inconsistent verdict, the trial judge has the responsibility, not to retain half of the verdict, but to resubmit the question to the jury.") If the district judge concludes that an inconsistent verdict reflects jury confusion or uncertainty, he or she has the duty to clarify the law governing the case and resubmit the verdict for a jury decision. *See, e.g.,*

---

3. "When the jury found no unlawfulness the    case was over." 579 F.2d at 871.

*Hauser v. Kubalak,* 929 F.2d 1305, 1307 (8th Cir.1991).

II. *The district judge did not abuse his discretion by restricting the cross-examination of Hafner's witness, Manley, concerning prior arrests and involvement with the police.*

■ During cross-examination of witness Manley, the officers attempted to question her about past arrests, not leading to conviction, in order to impeach her testimony. The district court permitted the appellants to inquire about prior *convictions* pursuant to Federal Rule of Evidence 609 and about prior bad acts probative to the witness' credibility pursuant to Federal Rule of Evidence 608.[4] For mere *arrests*, on the other hand, the court would not allow the officers to inquire about "previous arrests which it did not consider to be probative of [Manley's] credibility or to any alleged bias against defendants."

Consequently, the district judge allowed questioning of Manley about prior convictions for possession of a firearm and impersonating a police officer and about her use of aliases. The court would not allow the questioning of Manley about three separate arrests not resulting in conviction: petty theft, battery and wanton trespass, and unlawful possession of a controlled substance.

According to the officers, their inability to ask Manley about those arrests prevented them from proving a bias against the police and affected the outcome of the case. While Manley was a crucial witness for Hafner, the officers' case was not "seriously compromised" when the district judge limited the scope of the cross-examination.

The court provided the officers with sufficient means of demonstrating a prejudice on the part of the witness against them: they were able to ask the witness directly if she had a bias; they were allowed to ask her about previous convictions; and they were able to ask if she had any relationships with the police. Moreover, the officers do not provide persuasive arguments that the line-of-questioning they proposed would have gotten them farther than the cross-examination allowed by the court.

The district judge acted well within his discretion in limiting the cross-examination of Manley because of the allowed alternate ways to impeach Manley's testimony, the dubious value of the prohibited line of questioning, and the general prohibition against introducing past arrests not leading to conviction. *See* Fed.R.Evid. 608(b), 609(a).

III. *The district judge did not err by instructing the jury that a claim of conspiracy under 42 U.S.C. § 1983 can succeed by a mere showing of acquiescence.*

■ Count Two of Hafner's Amended Complaint alleged a conspiracy by the police officers to deprive him of his "rights, privileges and immunities secured by the Constitution and laws of the United States, and were in violation of 42 U.S.C. § 1983." In his charge to the jury, Judge Murray offered a long direction on conspiracy based in part on Hafner's proposed instruction.[5] The district judge first gave the legal definition of conspiracy[6] and then offered the following explanation:

In order to prove the existence of a civil conspiracy, the plaintiff is not required to provide direct evidence of the

---

4. The officers in their brief have contended that they were limited to cross-examining Manley about past convictions for crimes of moral turpitude. However, that is incorrect, as evidenced by the allowance of questions regarding convictions for handgun possession and police impersonation and regarding her use of aliases.

5. Hafner offered one jury instruction on civil conspiracy and the officers presented two. The judge refused to give the officers' instructions as they were incorrect statements of law but gave Hafner's.

6. "A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict the harm or injury upon another and an overt act that results in damages.'" *Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (7th Cir.1979) (quoting *Rotermund v. United States Steel Corp.,* 474 F.2d 1139 (8th Cir.1973)).

agreement between conspirators. Circumstantial evidence may provide adequate proof of the existence of such a conspiracy. *Thus, if you find two or more of the Defendants witnessed the beating inflicted upon the Plaintiff by any of the other Defendants either individually or jointly and did nothing to prevent it, then you must find that the Defendants participated in a civil conspiracy to deprive Plaintiff of his constitutional rights.*

If two persons pursue the same object, one performing one part of the act and the other another part of the act so as to complete it, with a view to the attainment of the object to which they are pursuing, this will be sufficient to constitute a conspiracy. The critical element is whether there was a meeting of the minds to accomplish the unlawful act.

In a conspiracy claim under Section 1983, there must be a showing that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in plaintiff being deprived of the constitutional right....

(Emphasis added). The officers challenge the inclusion of the emphasized section.

A timely objection was raised to the instruction at trial and again in their Motion for a New Trial. In both instances, the district court denied their objections. They raise the issue again on appeal, arguing that the instruction's implication that "mere acquiescence is sufficient to constitute a civil conspiracy under § 1983" was reversible error.

In reviewing the claim, we can begin by narrowing its focus, for it is only relevant with respect to Officer Brown. Both Officers Pease and Reininger were found liable for use of excessive force and therefore they did more than "merely acquiesce." While Officer Ressin was not found liable for use of excessive force, sufficient circumstantial evidence was provided to demonstrate that he assisted Pease and Reininger in their efforts. Manley testified that Ressin kicked Hafner and sat on his legs while Officers Pease and Reininger

kicked him. During direct examination, Officer Ressin acknowledged that he sat on Hafner's legs to bring him under control. Therefore, a factfinder could reasonably conclude that Ressin acted in concerted activity with Pease and Reininger. *See Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir.1987).

The circumstantial evidence against Officer Brown is not quite as strong: Manley did testify that Brown was the first to kick the handcuffed Hafner, though she described it as a "little" kick and did not state that Brown kicked him again. She testified that Brown simply watched the others beat Hafner.

Yet, Manley's testimony combined with the official relationship which Brown shared with the other police officers suffices to demonstrate indirectly an agreement between them. Brown was the first officer on the scene, he called for the assistance of the other officers, he first kicked Hafner (while not amounting itself to excessive use of force, the kicking may have acted to initiate the beating by others), he looked on while his colleagues continued beating Hafner, and he ignored his obligation as an officer to prevent such misconduct.

In their argument, the officers rely most heavily on a Massachusetts district court case, *Gross v. Bohn,* 782 F.Supp. 173 (D.Mass.1991); however, *Gross* is not directly relevant. There, the plaintiff alleged a conspiracy based on a series of occurrences: three "Terry" stops conducted on different dates by different police officers, a false arrest by another set of officers, and the release of a racist and inaccurate "Wanted" flier. The *Gross* plaintiff argued that *all* the officers involved in those events—even though the events occurred in different places, at different times, and in different contexts—were part of a conspiracy to discriminate against him because he was black. Yet, he was not able to provide even circumstantial evidence of an agreement between all of the officers; he only could prove that they all had placed information into a general police data system that in turn was used by the officers who committed the false arrest.

The present case is unlike *Gross.* The conspiracy charge derives from one arrest, one place, and one time. The officers arrested Hafner in concert and were present during the wrongdoing.

Finally, even if the trial judge committed error, the error is harmless. The challenged sentence was just a small part of an expansive explanation of civil conspiracy. Acquiescence can amount to a conspiracy agreement when, as here, one police officer watches an open breach of the law and does nothing to seek its prevention.

IV. *The district court did not commit plain error in submitting appellee's jury instruction on substantive due process.*

Rule 51 of the Federal Rules of Civil Procedure requires that a party object to a jury instruction *prior* to the jury retiring to consider its verdict and that the grounds of the objection be stated on the record. We have concluded that

> Failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired.

*Dennis v. General Electric Corporation,* 762 F.2d 365, 367 (4th Cir.1985) (citing *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940)).

In their appeal, the officers challenge for the first time three jury instructions (Hafner's instructions 7, 8, and 9) on the grounds that all incorrectly referred to and characterized the § 1983 claim of excessive force as arising out of the Fourteenth Amendment's substantive due process protections. In fact, the claim of excessive police force emanates from the Fourth Amendment protection against unreasonable searches and seizures. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In reviewing the officers' Motion for a New Trial, the district court acknowledged its mistake but concluded that

the failure to instruct the jury to consider the testimony under a [Fourth Amendment] "reasonableness" standard rather than a [Fourteenth Amendment] "substantive due process" standard [did not] amount[ ] to the denial of fundamental justice. The jury's verdict did not turn on the legal standard to be applied to the factual evidence but rather upon whose testimony they believed.

The district court's error does not appear "so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." The jury's decision reflected a weighing of the testimony, not of the legal standard. *See United States v. Webster,* 639 F.2d 174, 181 (4th Cir.1981).

Therefore, we have concluded as the *Dennis* court did that the district court's alleged error "was not sufficiently obvious or severe to render an objection by the appellants unnecessary." *Dennis,* 762 F.2d at 367. Consequently, the officers' unexcused delay in objecting to the instruction "precludes our consideration of that asserted error on the merits." *Id.*

AFFIRMED.