

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-2006

# Marable v. Pottsgrove

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3080

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Marable v. Pottsgrove" (2006). *2006 Decisions.* Paper 1242.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1242

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3080
_____

NEWSTELL MARABLE, SR; NEWSTELL MARABLE, JR.;
NEWSTELL MARABLE, III; MERRIT MARABLE

v.

WEST POTTSGROVE TOWNSHIP; WEST POTTSGROVE
POLICE; BRIAN HASS; STEVEN ZIEGLER; DOUGLASS
BERKS COUNTY TOWNSHIP; DOUGLASS BERKS POLICE
DEPT.; DANA DOTTERER; JOHN STASIK; JOHN HENRY;
NORTH COVENTRY TOWNSHIP; NORTH COVENTRY
POLICE DEPT.; ROBERT HOLLIS; AMITY TOWNSHIP;
AMITY TOWNSHIP POLICE DEPT.; MARK SCHERER;
UPPER POTTSGROVE TOWNSHIP; U. POTTSGROVE
POLICE DEPT. BARRY BERTOLET

NEWSTELL MARABLE, JR.,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. Action No. 03-CV-3738)
(Honorable Paul S. Diamond, District Judge)

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 31, 2006

Before: SMITH and COWEN, <u>Circuit</u> <u>Judges</u>, and ACKERMAN, <u>District</u> <u>Judge</u>.*

(Filed: April 19, 2006  )

_____

OPINION OF THE COURT

_____

ACKERMAN, <u>District</u> <u>Judge</u>.  This is an appeal from a grant of summary judgment in favor of defendants as to all counts of a complaint alleging claims under 42 U.S.C. §§ 1983 and 1985 for violation of the First, Fourth, Fifth, and Fourteenth Amendments, and state common-law claims for false arrest, false imprisonment, malicious prosecution, abuse of process, assault and battery, and intentional infliction of emotional distress.  On appeal, Plaintiff-Appellant Newstell Marable, Jr. contends that there are genuine issues of material fact that should have precluded the District Court from granting summary judgment as to his claims for false arrest, malicious prosecution, abuse of process, and civil rights conspiracy, as well as his § 1983 claim against the municipal defendants.  For the reasons discussed below, we AFFIRM.

## I.  BACKGROUND

This action arises from events occurring on July 7, 2001 and involving Plaintiff-Appellant Newstell Marable, Jr. ("Marable Jr."), his father, Newstell Marable, Sr.

_____

*The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

2

("Marable Sr."), and his children, Newstell Marable, III ("Marable III") and Merrit

Marable ("Merrit").[1]  Marable Sr. testified that on that date, he, Marable III, and Merrit

drove to a Wawa gas station in Douglass Township, Pennsylvania to purchase gas.  They

pulled up to the pump, apparently in front of a waiting SUV.  This prompted the SUV

driver to begin blowing his horn and waving his hands.  When Marable Sr. approached

the driver, the driver allegedly insulted Marable Sr. and Marable III, who are African-

American, using racially derogatory terms.  Marable Sr. contends that he made no

response, but simply walked away and continued on his business.

At some point after this encounter, the driver apparently called 9-1-1 to report that

an individual at the Wawa gas station had threatened him with a gun.  Officer Mark

Scherer of the Amity Township Police Department testified that on the 9-1-1 tape, the

driver clearly indicated that this individual had actually drawn a gun on him.  (App. at 577

(Scherer Dep. at 104:16).)  Officer Scherer received the report at approximately 10:00

A.M., and proceeded to the Wawa, where he spoke with the driver.  The driver reported

that a black male fitting Marable Sr.'s description and driving a two-tone brown pickup

truck had threatened to get a gun and "blow [the driver's] head off."  The driver's 11-

year-old son, who was in the SUV at the time, corroborated the threat.  (App. at 180

(Amity Township Police Department Incident Report # 26-01-0390).)  Marable Sr.

---

[1]The briefs vary as to the proper spelling of "Merrit."  We use the spelling "Merrit" throughout this Opinion because it is the spelling that appears in the Court's records and minutes.

3

categorically denies having made this threat.

Officer Scherer processed the license plate number provided by the driver and learned that the truck was registered to Marable Sr.'s address in Douglassville, Pennsylvania. Boyertown and Montgomery County radio dispatchers issued a "be on the lookout" ("BOLO") dispatch to police departments in the surrounding area. Although the driver told Officer Scherer that he had not actually seen a gun, this fact was left out of the BOLO dispatch. The dispatch merely indicated that the suspect was reported to have threatened someone with a gun.

Some time later, Marable Sr., who was driving home, noticed a police car following his vehicle for about five miles. Officer George Hollis of the North Coventry Police Department apparently was the first officer to observe Marable Sr.'s vehicle. Upon spotting the truck, Officer Hollis reportedly radioed Officer Steve Ziegler of the West Pottsgrove Township Police Department for assistance in performing a felony car stop. Officer Brian Cass of the West Pottsgrove Township Police Department was in the car when Officer Ziegler received the call. Montgomery County Dispatch instructed the officers to "stop and hold" the individual driving the truck. Officers Ziegler and Cass thereafter met up with Officer Hollis, and the officers followed Marable Sr. to his residence.

The record is clear that soon after Marable Sr. pulled into his driveway, and as he and his grandsons were attempting to unload a lawn tractor from the back of the truck, the

4

officers pulled up behind his vehicle and emerged from their patrol cars. There is no dispute that the officers had their guns drawn as they began to perform a felony car stop. The officers ordered Marable Sr., Marable III, and Merrit to move away from the truck and lie face down on the ground. Each was searched and handcuffed. Officer Ziegler placed Marable Sr. in the back of his (Ziegler's) patrol car; the officers simultaneously placed Marable III and Merrit in the back of Officer Hollis's patrol car.

As the officers performed these arrests in Marable Sr.'s driveway, his wife, Millicent Marable, emerged from the house. Upon seeing her husband lying face down on the driveway with a police officer pointing a gun at him, Mrs. Marable immediately went back into the house and phoned the family attorney, Paul Prince, and her son, Marable Jr.

Earlier in the day, Officer John Henry of the Douglassville Police Department had spoken in person with Officer Scherer. Officer Scherer stated that he had determined that no gun was shown or displayed at the Wawa. He also provided Officer Henry with a business card, and asked Officer Henry to provide the card to the resident at Marable Sr.'s address if Officer Henry should happen to see him. Officer Henry did not immediately proceed to the address.

Some time later, Officer Henry received a radio dispatch indicating that his assistance was needed at Marable Sr.'s address. Officer Henry arrived at the address to find Marable Sr., Marable III, and Merrit in the back seats of the two patrol cars. Around

5

the same time, Officer Barry Bertolet of the Upper Pottsgrove Police Department also arrived. Officer Henry testified that he attempted to obtain information concerning what had happened from the other officers and from Marable Sr., Marable III, and Merrit. Officers Henry and Hollis dispute Marable Sr.'s contention that he was transferred to the back of Officer Henry's patrol car. At deposition, Marable Sr. admitted to telling Officer Henry, in response to the officer's questioning, that there was a gun in the house. (App. at 702 (Marable Sr. Dep. at 42:1-3).)

Marable Jr. arrived on the scene after Marable Sr., Marable III, and Merrit had been in police custody for about 35 minutes. There is no dispute that Marable Jr. was upset at seeing his children in the back of a patrol car, and that he confronted the officers in a loud voice, demanding to know why his children were detained. When no satisfactory answer was forthcoming, Marable Jr. went into and out of the house numerous times "to try and calm down." (App. at 679 (Marable Jr. Dep. at 14:14).)

Marable Jr. admits telling the officers that "I have something for you. The attorney is on his way up here and he can straighten the problem out." (App. at 679 (Marable Jr. Dep. at 13:3-5).) At his June 3, 2002 guilty plea and sentencing, Marable Jr. did not deny stating in a loud voice, "I have something for all you mother f---ers," and immediately thereafter entering the house. (App. at 366.) Officers Hollis, Bertolet, Ziegler, and Cass stated in their appellate briefs that Marable Jr.'s words and actions were "of concern" in light of the fact that Marable Sr. was a self-professed "militant" who had

6

earlier told Officer Henry that there was a gun in the house.

Around this time, Officer Scherer appeared at the scene after having been summoned by dispatch. Officers Henry and Hollis subsequently removed the handcuffs from Marable III and Merrit and released them from the patrol car.

At this point in the narrative, the officers' versions of the facts diverge significantly from Marable Jr.'s recollection of the events. There appears to be no dispute that Marable Jr. had reemerged from the house and was addressing Officers Ziegler and Bertolet on the lawn. Officer Bertolet recalls that Marable Jr. was "yelling and threatening Officer Ziegler." (App. at 511 (Bertolet Dep. at 33:3-4).) In addition, there appears to be no dispute that Marable Jr. "unintentionally" spat in Officer Ziegler's face at least once, and possibly as many as three times, for which Officer Ziegler had to undergo subsequent testing for HIV and other diseases. Officer Bertolet also testified that he and Officer Ziegler repeatedly told Marable Jr. to calm down, and that after several warnings, the officers advised Marable Jr. that he was going to be arrested. Marable Jr. recalls only being told to "stop, and put your hands behind your back." (App. at 680 (Marable Jr. Dep. at 17:10-11).)

There is no dispute that Marable Jr. put his hands straight up in the air. (App. at 398 (Ziegler Dep. at 93:6-7); *id.* at 680 (Marable Jr. Dep. 17:11-12).) Officers Ziegler and Bertolet recall grabbing Marable Jr.'s arms at this point, and there is no dispute that the officers forced Marable Jr. to the ground. (App. at 398 (Ziegler Dep. at 93:18-20); *id.*

7

at 511-12 (Bertolet Dep. at 33:23-34:3); *id.* at 680 (Marable Jr. Dep. at 17:13).) Both officers testified that they, too, fell to the ground as they attempted to get Marable Jr.'s hands behind his back. Marable Jr. testified that he was in the process of bringing his hands down when the officers threw him on the ground without prior warning. (App. at 680 (Marable Jr. Dep. at 17:10-15).)

Around the time that Officers Ziegler and Bertolet were on the ground with Marable Jr., Officer Henry took Marable Sr. out of the back of the patrol car and began to take the handcuffs off him. Officer Henry testified that he had gotten one handcuff off Marable Sr. when Marable Sr. "broke free" and ran toward Officers Ziegler and Bertolet. (App. at 447 (Henry Dep. at 91:9-14).) At this time, Officer Bertolet testified, he felt a "thud" on his back as "someone" hit him from behind with their body. (App. at 512 (Henry Dep. at 36:25); *id.* at 517 (Henry Dep. at 49).) Marable Sr. testified that he never rushed Officers Ziegler and Bertolet. Rather, he testified, his legs were weak from sitting in the patrol car for 40 to 45 minutes, and he "stumbled" when Officer Henry brought him out. (App. at 704 (Marable Sr. Dep. at 51:13-16).) He also testified that he was pushed to the ground by "some officer." (*Id.*)

Officer Henry recalls pulling Marable Sr. off of Officer Bertolet's back and falling to the ground with Marable Sr. There, Officer Henry testified, he attempted once again to secure the handcuffs on Marable Sr.'s hands, and Marable Sr. resisted. Ultimately, Officer Henry testified, he secured Marable Sr. in the back seat of a patrol car and

8

advised him that he was under arrest for aggravated assault on a police officer. Marable Sr. disputes that he was ever on Officer Bertolet's back or that he resisted arrest, and contends that handcuffs were on him at all times. The record reflects that Officers Ziegler and Bertolet ultimately secured Marable Jr.'s hands in handcuffs and placed him in the back of a patrol car.

Briefs filed by Appellees North Coventry Township and Officer Hollis, and by Appellees Upper Pottsgrove Township, West Pottsgrove Township, and Officers Bertolet, Ziegler, and Cass, indicate that Marable Sr. subsequently pled guilty to one count of disorderly conduct. On June 2, 2002, Marable Jr. appeared before the Court of Common Pleas of Berks County, Pennsylvania, and pled nolo contendere to one count of resisting arrest. The Court assessed a nominal fine and sentenced Marable Jr. to probation for a term of 12 months.

On June 20, 2003, Marable Jr., Marable Sr., Marable III, and Merrit initiated the instant action against numerous municipalities and police officers, alleging claims under 42 U.S.C. §§ 1983 and 1985 for violation of the First, Fourth, Fifth, and Fourteenth Amendments, and state common-law claims for false arrest, false imprisonment, malicious prosecution, abuse of process, assault and battery, and intentional infliction of emotional distress. The District Court dismissed the Complaint's Fifth Amendment claims on April 30, 2004. Upon completion of discovery, the District Court, on May 2, 2005, granted summary judgment for the defendants on all of Marable Jr.'s remaining

claims, leaving for trial only several claims of Marable Sr., Marable III, and Merrit.

These three plaintiffs subsequently settled with all defendants, and the District Court

dismissed the action on May 19, 2005 pursuant to Local Rule 41.1(b).

Marable Jr., who was the only non-settling plaintiff, timely filed this appeal on

June 16, 2005. In his appellate brief, Marable Jr. identifies one, all-encompassing issue:

whether the District Court erred in granting summary judgment. This Court has

jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We now affirm.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo* and apply the

same standard that the district court utilized under Federal Rule of Civil Procedure 56(c).

*Antonelli v. New Jersey*, 419 F.3d 267, 272 (3d Cir. 2005). Summary judgment is

appropriate only where "there is no genuine issue as to any material fact and . . . the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A

district court faced with a summary judgment motion must view all evidence and the

inferences to be drawn therefrom in the light most favorable to the non-movant.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The critical

inquiry for a district court is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

10

In his appellate brief, Marable Jr. identifies five theories on which he contends the District Court erred in granting summary judgment for the defendants. He contends that genuine issues of material fact exist as to his § 1983 claim for false arrest, his § 1983 and common-law claims for malicious prosecution, his § 1983 claim for abuse of process, his § 1985 claim for conspiracy, and his claim against the municipal defendants pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### A. False Arrest and Malicious Prosecution

Marable Jr. pled nolo contendere to one count of resisting arrest pursuant to 18 Pa. C.S.A. § 5104. A conviction under this provision requires that the arrest be lawful. *In re Barry W.*, 423 Pa. Super. 549, 557, 621 A.2d 669, 673 (1993). In *United States v. Poellnitz*, 372 F.3d 562, 567, 568 (3d Cir. 2004), we recognized that under Pennsylvania law, a plea of nolo contendere does not constitute an admission of guilt, but merely signifies the defendant's consent to being punished as if he were guilty. Nevertheless, we also recognized that a plea of nolo contendere "is indisputably tantamount to a conviction." *Id.* at 566; *see also Eisenberg v. Commonwealth, Dep't of Pub. Welfare*, 512 Pa. 181, 185, 516 A.2d 333, 335 (1986) (quoting *Commonwealth v. Ferguson*, 44 Pa. Super. 626, 628 (1910)).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court considered the circumstances under which a person convicted of a crime by a state tribunal may recover damages pursuant to § 1983 for unconstitutional conviction or

11

imprisonment. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87 (footnote omitted). If the state court conviction remains undisturbed, the Supreme Court wrote, then a cause of action under § 1983 that calls into question the plaintiff's state conviction has not yet accrued. *Id.* at 487, 490. In applying this principle, a court's central inquiry should be whether a judgment in favor of the § 1983 plaintiff would necessarily imply the invalidity of the state conviction or sentence. *Id.* at 487 & n.7.

There is no dispute that Marable Jr.'s state court conviction was never reversed, invalidated, or called into question by the issuance of a writ of habeas corpus. Therefore, we must consider whether permitting Marable Jr. to recover damages on his § 1983 claims for false arrest and malicious prosecution would necessarily imply the invalidity of his state court conviction. A claim of false arrest or false imprisonment requires the plaintiff to establish "(1) the detention of the person, and (2) the unlawfulness of that detention." *Valenti v. Sheeler*, 765 F. Supp. 227, 232 (E.D. Pa. 1991); *see also Martell v. Chisholm*, 384 F. Supp. 1224, 1226 (W.D. Pa. 1974) ("[W]hen the arrest and confinement

12

are inextricably connected then the cause of action is one for false arrest and not false imprisonment.").  The unlawfulness of the detention is a *sine qua non*.  *See Forgione v. United States*, 202 F.2d 249, 252 (3d Cir. 1953) (noting that "false arrest and false imprisonment . . . consist of arrest or restraint without adequate legal justification").

Likewise, a viable claim for malicious prosecution under § 1983 requires the plaintiff to prove that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).  Thus, liability for malicious prosecution will not attach if the allegedly malicious prosecution did not result in a favorable outcome for the civil rights plaintiff.  *See Gilles v. Davis*, 427 F.3d 197, 210 (3d Cir. 2005).  We have recognized the same requirement of claims for malicious prosecution under Pennsylvania common law.  *See City of Erie, Pa. v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 161 (3d Cir. 1997) ("Under Pennsylvania law, favorable termination is an essential element of the tort of malicious prosecution.").

With respect to a claim either for false arrest or malicious prosecution, it is clear that an award of damages in this case would necessarily imply that Marable Jr.'s state court conviction and sentence were unlawful.  An award of damages pursuant to the false

13

arrest claim would require a finding that Marable Jr. had been unlawfully detained. Such a finding would be sharply at odds with the fact of Marable Jr.'s conviction under 18 Pa. C.S.A. § 5104, requiring that the underlying arrest be lawful. Similarly, an award of damages pursuant to the malicious prosecution claim would require a finding that the state proceedings ended favorably for Marable Jr., despite his conviction and sentence. In either instance, *Heck* bars Marable Jr.'s recovery. *See Heck*, 512 U.S. at 486-87 (discussing specifically the tort of malicious prosecution). Therefore, we find that the District Court did not err in granting summary judgment to the defendants on Marable Jr.'s claims for false arrest and malicious prosecution.[1]

## B. Abuse of Process

An abuse of process occurs when a party employs legal process against another primarily to accomplish a purpose for which it was not designed. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). Pennsylvania recognizes a cause of action for abuse of process where "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Rosen v. Am. Bank of Rolla*, 426

---

[1]It is of no significance that the state prosecutor dropped the charge of making terroristic threats as part of the plea agreement he reached with Marable Jr. A prosecutor's decision to drop charges as part of a compromise with the accused does not amount to a "favorable termination" of state proceedings for purposes of permitting the accused to maintain a subsequent claim under § 1983 for malicious prosecution. *See Hilferty v. Shipman*, 91 F.3d 573, 580 (3d Cir. 1996).

Pa. Super. 376, 382, 627 A.2d 190, 192 (1993). For a cause of action to lie, there must have been a "perversion" of legal process. *Gen. Refractories*, 337 F.3d at 304. "'[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant . . . .'" *Rosen*, 426 Pa. Super. at 382, 627 A.2d at 192 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)). We have previously recognized that arrest constitutes a form of legal process. *See Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1037 (3d Cir. 1988).

The District Court granted summary judgment for the defendants as to Marable Jr.'s claim for abuse of process, finding no evidence in the record that the police officers "perverted" legal process or sought any object beyond Marable Jr.'s criminal conviction. Having carefully reviewed the record, we agree. The events of July 7, 2001 are far removed from the "usual case" of abuse of process, where legal process is employed for extortionate or coercive objectives. *See Rosen*, 426 Pa. Super. at 382, 627 A.2d at 192 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)). Here, there is simply no evidence in the record that the officers, in arresting Marable Jr., had as their primary purpose some objective for which the legal process of arrest was not intended. Nor is there evidence of a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process." *See Williams v. Fedor*, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999). Instead, the record shows that officers arrived on the scene in

15

response to a 9-1-1 call involving Marable Sr., and that Marable Jr. appeared only subsequently. There is no dispute that Marable Jr. was yelling, and that the officers had reason to believe that there was a gun in the house. Notwithstanding Marable Jr.'s general allegations of the officers' invidious motives, the record reflects that Marable Jr. was arrested and charged with making terroristic threats and resisting arrest, and that in exchange for a dismissal of the former charge, he ultimately pled nolo contendere to the charge of resisting arrest, for which he was sentenced. Because "[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions," *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 858 (E.D. Pa. 2000), we agree with the District Court that Marable Jr.'s abuse of process claim fails.

### C.    Conspiracy

Marable Jr. also contends that he brought a § 1983 conspiracy claim against all of the individual police officer defendants. The Amended Complaint does not allege a claim for conspiracy under § 1983, and therefore we must find that this argument is waived. We note, however, that Marable Jr. alleged a count of conspiracy pursuant to 42 U.S.C. § 1985(3). To prove conspiracy under § 1985(3), a plaintiff must show "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured

16

in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

Although Marable Jr. is correct that circumstantial evidence may suffice to establish a civil rights conspiracy, *see Hafner v. Brown*, 983 F.2d 570, 577-78 (4th Cir. 1992), the record lacks even the necessary circumstantial evidence to survive summary judgment. There is simply no evidence in the record of a conspiracy among the defendants in this action. Nor has Marable Jr. proven the deprivation of a cognizable right or privilege. Accordingly, we conclude that the District Court did not err in granting summary judgment to the defendants with respect to Marable Jr.'s § 1985(3) claim.

### D.   *Monell* **Liability**

Marable Jr. asserts a *Monell* claim against the municipal defendants as a result of the police officers' failure to adhere to the North Coventry Rules of Conduct regarding the handling of juveniles. Although Marable Jr. has not provided this Court with a copy of the applicable rules, this omission does not prevent our review of the legal merits of his *Monell* claim. A municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation. *Monell*, 436 U.S. at 694. When "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants," such failure to train may itself constitute a policy or custom that is actionable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). However, when a single decision is the basis of the alleged

17

constitutional violation, a municipality generally may incur *Monell* liability only where the decisionmaker is a municipal "policymaker." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). Likewise, a mere showing that a particular officer violated policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to establish a municipality's liability under § 1983 for failure to train. *Simmons v. City of Phila.*, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing *Harris*, 489 U.S. at 390-91)). Governmental liability under § 1983 may not attach merely by operation of respondeat superior. *Monell*, 436 U.S. at 691.

We find that Marable Jr.'s *Monell* claim fails as a matter of law. As a threshold matter, we note that any claim that Marable Jr. has brought on behalf of his children must fail because his children have settled their claims against all of the municipal defendants. We further note that a municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989). However, even if we look to the substance of Marable Jr.'s argument, we find that at most, his appellate brief demonstrates that there was a formal policy in place—the North Coventry Rules of Conduct—and that on July 7, 2001, the police officers who detained Marable III and Merrit did not adhere to the rules governing the handling of juveniles. This is insufficient to establish a policy or custom of constitutional violations evidencing the municipal defendants' deliberate indifference to the rights of their inhabitants.

18

Marable Jr. has submitted newspaper articles detailing the November 2003 suspension of Charles Madonna, Upper Pottsgrove Township's police chief, for allegedly making racist remarks. Mr. Madonna, however, is not a defendant in this matter, and there is no evidence that his remarks evidenced an official policy or custom. Nor is there any evidence in the record of a pattern of mishandling of minors by the municipal defendants. *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."). Therefore, we conclude that the District Court did not err in granting summary judgment to the defendants on Marable Jr.'s *Monell* claim.

## III. CONCLUSION

For the foregoing reasons, we find that the District Court did not err in granting summary judgment for all defendants with respect to Marable Jr.'s § 1983 claim for false arrest, his § 1983 and common-law claims for malicious prosecution, his § 1983 claim for abuse of process, his § 1985 claim for conspiracy, and his *Monell* claim against the municipal defendants. Accordingly, we will AFFIRM the District Court's adjudication of this matter in all respects.