PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CAROLYN MCKAY SYDNOR,

      *Plaintiff-Appellant,*

v.

FAIRFAX COUNTY, VIRGINIA,

      *Defendant-Appellee.*

No. 11-1573

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:10-cv-00934-JCC-IDD)

Argued: May 16, 2012

Decided: June 19, 2012

Before WILKINSON, GREGORY, and FLOYD,
Circuit Judges.

---

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Gregory and Judge Floyd joined.

---

## COUNSEL

**ARGUED:** Ellen Kyriacou Renaud, SWICK & SHAPIRO, PC, Washington, D.C., for Appellant. James Edward Wilcox, Jr., COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for

Appellee. **ON BRIEF:** David P. Bobzien, County Attorney, Peter D. Andreoli, Jr., Deputy County Attorney, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

The plaintiff in this case brought a discrimination claim against her former employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, for denying her a reasonable accommodation following her foot surgery. The district court dismissed her case after concluding she had failed to exhaust her administrative remedies by not filing her proposed accommodation with the Equal Employment Opportunity Commission ("EEOC"). Because we think that plaintiff's administrative remedies were adequately exhausted, we reverse and remand for further proceedings.

I.

In January 2009, Carolyn Sydnor, a public health nurse employed by the Fairfax County Health Department, underwent surgery on her left foot. She returned to work that March. On November 23, 2009, Fairfax County terminated Sydnor from her position because it believed that her medical restrictions following surgery limited her "capacity to perform the full clinical duties of a public health nurse."

Following her termination, Sydnor filed an administrative charge with the EEOC on December 18, 2009, alleging that the County had discriminated against her on the basis of her disability in violation of the ADA. According to her charge, Sydnor had "requested a reasonable accommodation" from her manager, Edwyna Wingo, but was denied her desired relief. The charge did not describe the accommodation requested.

Along with the charge, Sydnor completed an EEOC intake questionnaire. In her questionnaire, she described her disability as "limited walking ability; cannot lift more than 20 lb.; must use electric wheelchair if moving for any length of time; limited writing ability." She also confirmed that she had asked the County for "changes or assistance to do [her] job because of [her] disability." In response to the questionnaire's instruction to "describe the changes or assistance that you asked for," Sydnor wrote that she had requested "to be assigned as Nurse of the Day and to be in the clinic doing lighter duty work." She then alleged that in response to her request, "Wingo said she did not want me around the patients in the clinic because of my wheelchair."

The EEOC issued Sydnor a right-to-sue notice on August 10, 2010, and she filed a complaint against the County in federal court ten days later. Following discovery, the County moved for summary judgment. As the district court observed, at this stage of the litigation, Sydnor claimed that the "reasonable accommodation she should have been offered was to work in the clinic with a wheelchair." The court denied the County's motion after finding that "it remains in dispute whether Plaintiff could have served as a public health nurse while in a wheelchair."

The County then filed a motion *in limine* seeking to exclude evidence that Sydnor had requested to work in the clinic in her wheelchair. According to the County, "the sole accommodation that Sydnor informed the EEOC that she had requested was light duty work" and she had "never stated in her EEOC Charge that she would have been able to perform the essential job duties of a clinic nurse in a wheelchair." The district court agreed that plaintiff did not "file her proposed accommodation with the EEOC" and dismissed the case *sua sponte* because of her "failure to exhaust administrative remedies." Sydnor now appeals.

## II.

Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e-5(b), (f)(1). Rather than "a formality to be rushed through," this exhaustion requirement is "an integral part of the Title VII enforcement scheme." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). For one thing, requiring a party to file a charge with the EEOC "ensures that the employer is put on notice of the alleged violations," *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005), thereby giving it a chance to address the alleged discrimination prior to litigation. This means that injured parties can often obtain relief far earlier than they would be able to in the courts, where "the ponderous pace of formal litigation" can force "victims of discrimination . . . to wait while injustice persists." *Chacko*, 429 F.3d at 510. (internal quotation marks and citation omitted). For another, the requirement places the resolution of employment discrimination disputes initially in the hands of the EEOC. Allowing this agency the first crack at these cases respects Congress's intent "to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000).

The goals of providing notice and an opportunity for an agency response would be undermined, however, if a plaintiff could raise claims in litigation that did not appear in his EEOC charge. To prevent such gamesmanship, we have held that the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Thus, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors,

and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. We have therefore not found exhaustion where a charge alleges only racial discrimination but the complaint includes sex discrimination, *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002), or where a charge alleges only retaliation but the complaint alleges racial discrimination as well, *Jones*, 551 F.3d at 301.

At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs. While it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns. "Title VII . . . sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (internal quotation mark and citation omitted). It would be inconsistent with this framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies. As the Supreme Court has made clear, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.* at 406.

Accordingly, an "administrative charge of discrimination does not strictly limit a Title VII suit which may follow." *Miles*, 429 F.3d at 491. Instead, so long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she "may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). We have therefore found exhaustion where both the administrative complaint and formal litigation concerned "discriminat[ion] in promotions" but involved different aspects of the "promotional system," *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th

Cir. 1981), and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct. *Smith*, 202 F.3d at 248. In doing so, we have sought to strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other.

III.

A.

We now turn to plaintiff's efforts to satisfy the exhaustion requirement. It is clear that Sydnor filed an administrative charge with the EEOC. It is clear that she filed her charge on time. *See* 42 U.S.C. § 2000e-5(e)(1). And it is clear that her charge claimed what her suit now claims—that she had "been discriminated against based on [her] disability" by being "denied a reasonable accommodation." The County nevertheless contends that she did not exhaust her administrative remedies. According to the County, the accommodation Sydnor raised at summary judgment—working full duty with the assistance of a wheelchair—is so "fundamentally different" from the one mentioned in her EEOC questionnaire—light duty work—that she failed to satisfy the exhaustion requirement.[1] Appellee's Br. at 8.

We are not persuaded. The variation in these proposed accommodations does not mean that Sydnor failed to exhaust her administrative remedies. The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are "rea-

---

[1]We note that courts take differing views on a questionnaire's precise bearing on the issue of exhaustion. *Compare Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 999 (E.D. Mo. 2009), *with Triplett v. Midwest Wrecking Co.*, 155 F. Supp. 2d 932, 936 (N.D. Ill. 2001). As the parties here make no argument that consideration of the questionnaire should be excluded, and both parties in fact discuss it at length, we, like the district court, shall consider it as well.

sonably related," *Smith*, 202 F.3d at 247, not precisely the same, and there are sufficient similarities between the two to find this requirement satisfied here.

To start with, the allegations in Sydnor's administrative documents and her formal lawsuit involved the same place of work and the same actor. Her EEOC charge stated that she had "requested a reasonable accommodation from Edwyna Wingo, Nurse Manager" but "was denied" one, and her questionnaire indicated that she had desired to work "in the clinic." At summary judgment, she similarly claimed that she "was able to work safely in the clinic" but that "Wingo . . . believed that the Department had no obligation to accommodate" her. Sydnor's case against the County thus did not involve shifting sets and a rotating cast of characters that would have deprived her former employer of notice of the allegations against it. *See Chacko*, 429 F.3d at 511 (noting that the "administrative charge and formal complaint must describe [the] same individuals" (citation omitted)).

Plaintiff's administrative and judicial claims also focused on the same type of discrimination. Her EEOC charge alleged that she "was denied a reasonable accommodation" and her formal complaint likewise claimed that the County "has refused to accommodate her physical impairments." Consequently, the County was on notice from the beginning that it was accused of not providing a disabled plaintiff with a reasonable accommodation. This was not a case in which "the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex," *Jones*, 551 F.3d at 300, but one in which the type of prohibited action alleged—discrimination on the basis of disability by failing to provide a reasonable accommodation—remained consistent throughout. Indeed, it is similar to *Smith*, in which the plaintiff's underlying claim—retaliation—did not change, even though the form of the alleged retaliation—threatened termination and refusal to offer any other positions—varied. 202 F.3d at 248.

What is more, plaintiff's description of her disability did not shift from the administrative to judicial proceedings. Unlike some litigants, Sydnor did not attempt to avoid the exhaustion requirement by raising new disabilities for the first time in court. *See, e.g.*, *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1355 n.7 (S.D. Fla. 1999) (holding that a plaintiff's administrative claim based on her physical disability did not satisfy the exhaustion requirement with respect to her judicial claim based on a mental disability). Instead, Sydnor notified the County in her EEOC questionnaire that her disability included her "limited walking ability" and repeated this claim in her complaint by asserting that her "ability to walk has been substantially limited since [her foot] surgery." The County was thus aware of the nature of Sydnor's disability well in advance of litigation.

When taken together, the similarities between Sydnor's administrative and judicial narratives make clear that the County was afforded ample notice of the allegations against it. This case therefore differs markedly from *Chacko*, in which the plaintiff's EEOC charge and formal suit "dealt with different time frames, actors, and conduct" such that they "describe[d] two different cases." 429 F.3d at 511-12. To be sure, there is a difference between light duty work and full duty work with the assistance of a wheelchair. The former would require Sydnor to engage in only a few discrete tasks, the latter to fulfill all of her normal responsibilities. But even here, these different proposals are linked together by a similarity—whatever the task, Sydnor faced the same difficulties in walking after her foot surgery and needed some form of accommodation. Because one logical accommodation for this specific disability was the use of a wheelchair, the County should not have been caught off guard when it was eventually raised. We therefore believe that this particular distinction does not overcome the significant similarities in this case that support a finding of exhaustion.

B.

The County also contends that Sydnor did not exhaust her remedies because she never mentioned the use of a wheelchair as a proposed accommodation in her administrative documents. This argument misses the mark for several reasons.

For one thing, as the County itself admits, Sydnor referred to her use of a wheelchair multiple times in her EEOC questionnaire. Appellee's Br. at 25-26. In describing her disability, she stated that she "must use [an] electric wheelchair if moving for any length of time." Then, when asked "what medication, medical equipment or other assistance" she used "to lessen or eliminate the symptoms of [her] disability," she listed her "electric wheel chair" first. Sydnor also alleged that her supervisor opposed this form of accommodation, stating that "Wingo said she did not want me around the patients in the clinic because of my wheelchair" and that "Wingo told me she didn't want me running around in my scooter in the clinic." These statements plainly put her employer on notice that Sydnor relied on a wheelchair to do her job. It thus should have come as no surprise that the use of this device would eventually be raised as a proposed accommodation.

Similarly, the disability discussed in Sydnor's EEOC questionnaire—"limited walking ability"—should have signaled to the County that the use of a wheelchair could be a possible proposed accommodation. It is not as if Sydnor stated that she had a shoulder injury and then surprised her employer in court with a request to use a wheelchair. Instead, the accommodation proposed here flowed logically from the disability discussed in the questionnaire. We are thus hardpressed to see how the fact that Sydnor was not more explicit in her administrative documents failed to provide the County with notice sufficient "to voluntarily and independently investigate and resolve the alleged discriminatory actions." *Chacko*, 429 F.3d at 510.

Finally, Sydnor's request to use a wheelchair to do her job could "be expected to follow from a reasonable administrative investigation" by the EEOC. *Smith*, 202 F.3d at 247. A "reasonable investigation" of a charge of a failure to accommodate "would naturally relate to [a plaintiff's] then-existing medical restrictions" as well as her employer's "response, if any, to those restrictions," *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009), including her need for a wheelchair to fulfill her job responsibilities following foot surgery. Given that Sydnor's questionnaire stated that she needed to "use [an] electric wheelchair if moving for any length of time" and that her supervisor "said she did not want [Sydnor] around the patients in the clinic because of [her] wheelchair," the use of this device would be an obvious subject for any EEOC investigation. The fact that Sydnor did not explicitly spell out this accommodation matters not, for it is well settled that the reasonable investigation standard can encompass details "not specifically enumerated in the [administrative] complaint." *See Chisholm*, 665 F.2d at 491.

At the end of the day, we cannot see how adopting the County's position would further the goals of the exhaustion requirement. Sending Sydnor back to square one for failing to list this proposed accommodation in her administrative documents hardly serves the "purposes of notice and conciliation," *Chacko*, 429 F.3d at 510, as her EEOC questionnaire is replete with references to her disability and her need to use a wheelchair. Instead, by dwelling on such technicalities, we would only undermine the congressional preference for agency resolution in this area. A quest for absolute precision in the administrative charge would only "encourage individuals to avoid filing errors by retaining counsel," thereby "increasing both the cost and likelihood of litigation." *Holowecki*, 552 U.S. at 406. We decline to read the exhaustion requirement that strictly.[2]

---

[2]The parties also dispute whether the exhaustion requirement is a jurisdictional one. Because we think that Sydnor has exhausted her administrative remedies here, we need not address that question.

## IV.

We obviously express no view on the merits of Sydnor's underlying ADA claim, including the feasibility of any proposed accommodation. But we do think that she has exhausted her administrative remedies. For the foregoing reasons, we reverse the district court's decision to dismiss this case and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED*